**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JAMES PETERSON,             ) | |
|                        ) | |
|        Plaintiff,       ) | |
|                        ) | |
|        vs.          ) | 26 CV 9379 |
|                        ) | |
| The CITY OF CHICAGO, Illinois, a municipal  ) | Judge |
| corporation, Chicago Police Officers JOSHUA    ) | |
| WHITE #17506, MIGUEL ZAMUDIO #13823 ) | Magistrate Judge |
| and KEVIN BIONDIC #17021,      ) | |
|                        ) | |
|       Defendants.    ) | |

**COMPLAINT**

Plaintiff, JAMES PETERSON, makes the following complaint against the CITY OF

CHICAGO ("Defendant CITY") and Chicago police officers JOSHUA WHITE, MIGUEL

ZAMUDIO, and KEVIN BIONDIC ("Defendant OFFICERS").

**JURISDICTION AND VENUE**

1. This action is brought pursuant to 42 U.S.C. §1983 to seek relief and damages for the

   deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue is proper for this Court under 28 U.S.C. §1391(b) because the events in this case occurred

   in this district.

**THE PARTIES**

4. Plaintiff JAMES PETERSON is a 33-year-old resident of Chicago, Illinois.

5. At all relevant times, Defendant OFFICERS are or were sworn members of the Chicago Police

   Department (CPD), employed by Defendant CITY, and acting under color of law and within the

   scope of their employment.

6. Defendant CITY is a municipal corporation duly incorporated under the laws of the State of Illinois and is or was the employer and principal of Defendant OFFICERS. Should PETERSON prevail against any of the Defendant OFFICERS on his state claim, the CITY is liable under the doctrine of *respondeat superior*. Should PETERSON prevail on any of his federal claims against Defendant OFFICERS, the CITY will be required to indemnify Defendant OFFICERS under Illinois law, 735 ILCS 10/9-102.

**FACTS**

7. On August 13, 2024 PETERSON was driving in the Back of the Yards neighborhood in Chicago.

8. On August 13, 2024, Defendant OFFICERS were on duty as Chicago police officers working in the same area.

9. Defendant OFFICERS were driving an unmarked vehicle.

10. Defendant OFFICERS were not wearing Chicago police officer uniforms.

11. As PETERSON was driving on South Hermitage Avenue, his vehicle's check engine light came on.

12. PETERSON parked his car and got out to check under the hood.

13. While PETERSON was outside of his car, he observed Defendant OFFICERS' vehicle come traveling down Hermitage Avenue at a high rate of speed without its lights or sirens on.

14. Defendant OFFICERS stopped their vehicle and jumped out.

15. Defendant OFFICERS approached a group of young men standing on the sidewalk approximately 25 feet South of PETERSON.

16. The group of young men ran from Defendant OFFICERS.

17. Defendant OFFICERS chased the fleeing young men, but on information and belief, did not catch any of them that night.

18. Defendant OFFICERS then approached PETERSON.

19. PETERSON was obviously not part of the group of young men Defendant OFFICERS initially attempted to detain.

20. PETERSON never ran from Defendant OFFICERS.

21. Nevertheless, Defendant OFFICERS detained PETERSON and immediately conducted a search of his clothing.

22. PETERSON had nothing illegal on his person and Defendant OFFICERS did not find anything illegal on PETERSON's person.

23. Defendant OFFICERS placed PETERSON in handcuffs.

24. From the moment Defendant OFFICERS detained PETERSON, he was not free to leave.

25. PETERSON was seized within the meaning of the Fourth Amendment.

26. Defendant OFFICERS had neither probable cause nor reasonable suspicion to detain or search PETERSON.

27. Defendant OFFICERS ultimately located a rifle underneath a car near where the group of young men had been before they fled.

28. Defendant OFFICERS arrested PETERSON for possession of this gun and charged him with three counts of felony unlawful possession of a weapon.

29. PETERSON never possessed the gun Defendant OFFICERS recovered.

30. Defendant OFFICERS never saw PETERSON in possession of the gun they recovered.

31. Defendant OFFICERS created (or caused to be created) false police reports about the reasons f or, and circumstances of, PETERSON's arrest.

32. One of the false statements contained in the reports written by Defendant OFFICERS stated that Defendant OFFICERS observed PETERSON "ben[d] his upper body forward towards the ground behind a vehicle[,]" that the rifle was located "at the exact location where [Defendant

3

OFFICERS] observed [PETERSON] bend over[,]" and that PETERSON "was the only person in the area of said rifle location."

33. The charges Defendant OFFICERS placed against PETERSON were false and Defendant OFFICERS knew they were false.

34. PETERSON was held in a locked cell at the police station for several hours.

35. PETERSON was ultimately transferred to the Cook County Jail where he was imprisoned for nearly a month, or until September 11, 2024.

36. While detained in the jail, PETERSON contracted cellulitis, a painful skin infection that he ultimately received treatment for at Stroger hospital.

37. On September 11, 2024, PETERSON was released on Electronic Home Monitoring (EHM).

38. While on EHM, PETERSON was still seized within the meaning of the Fourth Amendment because he was subject to 24/7 monitoring by the Cook County Sheriff's Office and his liberty was severely restricted as he was not permitted to leave his home except for eight hours one day per week.

39. PETERSON had to hire a lawyer to defend him against the false criminal charges Defendant OFFICERS placed against him.

40. On September 15, 2025, PETERSON went to trial before Cook County Judge Charles P. Burns.

41. Judge Burns made a directed finding after the close of the State's evidence in favor of PETERSON, finding him not guilty of all charges and releasing him from EHM.

42. Peterson was in custody in the Cook County Jail for a total of 29 days and on EHM for a total of 369 days.

**COUNT I**
(42 U.S.C. § 1983, False Arrest)

43. Each of the preceding paragraphs is incorporated as if fully restated here.

44. As described above, Defendant OFFICERS arrested PETERSON, or caused him to be arrested and seized without probable cause in violation of the Fourth Amendment to the United States Constitution.

45. As a direct and proximate result of this illegal arrest, PETERSON suffered a loss of liberty and other damages, which will be proven at trial.

WHEREFORE, PETERSON prays for a judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate him for the injuries he has suffered, plus punitive damages, as well as costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT II
### (42 U.S.C. § 1983, Malicious Prosecution)

46. Each of the preceding paragraphs is incorporated as if fully restated here.

47. As described above, Defendant OFFICERS willfully, intentionally, and recklessly initiated criminal proceedings against PETERSON and then caused those proceedings to continue without any probable cause to believe PETERSON had committed any of the crimes with which he was charged.

48. With malice or reckless indifference to PETERSON'S rights, Defendant OFFICERS created false and inaccurate police reports and other documents pertaining to the circumstances of PETERSON'S arrest which were relied upon by prosecutors.

49. Defendant OFFICERS' misconduct resulted in a pretrial detention and seizure of PETERSON.

50. PETERSON was found not guilty following a motion for a directed verdict, terminating the prosecution in his acquittal.

51. As a direct and proximate result of Defendant OFFICERS' misconduct, PETERSON suffered a loss of liberty and other damages, which will be proven at trial.

WHEREFORE, PETERSON prays for a judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate him for the injuries he has suffered, plus punitive

5

damages, as well as costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT III
(Illinois Malicious Prosecution)

52. Each of the preceding paragraphs is incorporated as if fully restated here.

53. As described above, Defendant OFFICERS willfully, intentionally, and recklessly initiated criminal proceedings against PETERSON and then caused those proceedings to continue without any probable cause to believe PETERSON had committed any of the crimes with which he was charged.

54. With malice or reckless indifference to PETERSON'S rights, Defendant OFFICERS created false and inaccurate police reports and other documents pertaining to the circumstances of PETERSON'S arrest which were relied upon by prosecutors.

55. PETERSON was found not guilty on a motion for a directed verdict, terminating the charges in a manner indicative of innocence.

56. As a direct and proximate result of malicious prosecution Defendant OFFICERS' initiated and/or caused to continue against PETERSON, he suffered pecuniary damages and emotional distress which will be proven at trial.

**WHEREFORE**, PETERSON prays for a judgment against Defendant CITY in a fair and just amount sufficient to compensate him for his damages, as well as any other relief as the Court finds just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

JAMES PETERSON

By: /s Torreya L. Hamilton
Attorney for Plaintiff

6

HAMILTON ⚖ HENNESSY, LLC
53 West Jackson Blvd. Suite 620
Chicago, IL 60604
312.726.3173